The United States Court of Appeals for the Ninth Circuit is now in session. Good morning. It's my pleasure to welcome all of you to our Browning Courthouse here in San Francisco. This is the time set for oral argument. We'll be hearing en banc in the case of Health Freedom Defense Fund v. Albert Carvalho. If the counsel are ready to proceed, you may come forward. Good morning, your honors. May it please the court, my name is Scott Street, attorney for the plaintiff's appellants in this case. I understand that we have 30 minutes allocated per side. I'm going to hope to reserve 10 of that for rebuttal if I may. Your honors, when I first heard that the court had granted en banc review in this case, I had mixed emotions. On the one hand, we have clients, the plaintiffs, who have been fighting for more than three years now to remedy the effects of the policy that they're challenging in this lawsuit. They're still trying to remedy the effects. Does the record say anything about their employment status? Are they terminated? Are they reinstated? Are they seeking reinstatement? What's the status? It's a good point, your honor, and so with some of the plaintiffs, several of the plaintiffs were terminated. It's alleged in the second amended complaint, I believe, at the very minimum, Sandra Garcia and Jovhanis Sapongian were terminated. I know that Mr. Sapongian is, who was a teacher's aide, a person who was terminated, told that he couldn't work remotely, that there was no point in him seeking an accommodation. Has sought to be rehired, but has not been rehired for the full-time position that he had before he was terminated. I think he is, at this point, working maybe one day a week as a substitute teacher. Is any of this in the record? Yes. You mentioned there are recent attempts he's been trying to be rehired. Is that in the record? The recent events are not in the record because the second amended complaint, I want to say, dates back to 2022. So at that point, Mr. Sapongian had been terminated. The recent events, I think if we were to go back to the district court, would be included in an updated complaint. And quite frankly, your honors, that doesn't even account, that's just one example. There are many, many others. One of our clients, the California Educators for Medical Freedom, represents hundreds of additional people who have been either terminated, lost benefits, and so forth. So one of my desires, and this is a double-edged sword, I guess, is we were very eager to go back, to take this case back to the district court as quickly as possible. We are still eager to take this case back to the district court, especially in light of the court's shifting analysis of the 11th Amendment sovereign immunity issues. And its indication that it would be willing to reconsider that analysis with respect to school districts. So if we do go back to the district court, if we get the opportunity to file an amended complaint, we would seek, in addition to the relief we sought before, which I don't think is moot, as explained in our briefs, we would also seek to allege a claim for damages and to litigate the issue of whether, now under the Cohen v. State Bar decision, the court's analysis of school district immunity for schools in California should change. But as it stands right now, there is no claim for monetary damages. There is no claim, Judge Wardlaw, for monetary damages. The point about, Mr. Street, is there, in their claims for relief, is there a request for reinstatement? There is not an explicit request for reinstatement. I didn't draft the complaint, so I would have included one. And if we go back and we have an opportunity to file an amended complaint, we would include a specific relief for reinstatement for the people who have not been reinstated, of course. And then, in addition, we would seek damages, or at least we would seek damages and seek to litigate the issue of whether the district has immunity under the court's new sovereign immunity standard. But why weren't some of those things requested initially? It seems like they'd been terminated, right, at the time? Some had been terminated, Your Honor, at the time the complaint was filed. If you look at the allegations in the second amended complaint that relate to the individual plaintiffs, two had been, I believe, two had been terminated. Several had been threatened with termination. I can't, again, as the person who didn't draft that complaint at the time it was drafted, I can't say why it wasn't included, although I do think that there was, I do recall there being a reference in the second amended complaint, which is the operative complaint, about the plaintiffs potentially seeking leave to amend to include those claims at a certain point in time. I believe the complaint refers to issues regarding qualified immunity. I think it meant sovereign. I think they meant sovereign immunity because I think that this issue, obviously the court hadn't issued the Cone decision when the second amended complaint was filed. That was filed in 2022. Cone, if I remember correctly, was issued in 2023. So those are new claims that we would, you know, we would streamline and we would allege. Go ahead. It's been, I think, 17 months since the school district's policy has been rescinded. I guess what is your best argument or what makes you think that it is still reasonably expected to be reinstituted? The challenge policy? Beg your pardon? The policy that we were challenging? Yes. Well, I think that, Your Honor, I think that gets into the circumstances under which the policy was repealed, including statements that were made. I'm sure Judge Collins will remember this, statements that were made by the district's lawyer at the oral argument in front of the panel, as well as the circumstances following that in which the district, I would say, hastily repealed the policy and did so with statements by board members that did not, I would not say stated explicitly that the district would reinstate this policy. Well, but you have to show what a reasonable expectation. So assume, let's just assume that for purposes of this that I agree with you that they held on to it longer than anyone else and they waited until after oral argument and that it didn't go well and there were comments that were made that would indicate that there was going to be a whole bottle of whoop was going to come after that and so they attempted to avoid the jurisdiction of the court and repeal it and all of those comments. But you still, for that doctrine, have to show a reasonable expectation that they would reinstate the mandate. What is the evidence before us that there is a reasonable expectation, other than the fact that they were very stubborn and clung to it longer than anyone else? Well, I would, Judge Callahan, I would emphasize two things. First of all, I would frame the issue you're discussing carefully because under the Supreme Court's case law, and particularly the case I'm thinking of is the L.A. County versus Davis case, for that voluntary cessation doctrine to apply, first of all, the burden is on the party claiming mootness. The burden is on the school district to show that it's not reasonably likely that this policy will be reinstituted. And I think what the panel did, I think the panel did a very good job of this, is saying, well, we're going to look at what you did in light of your burden. The second key point here is, and this is, I would say, an overlooked part of the voluntary cessation doctrine, is not only does the party seeking, in this case the district seeking to have the case thrown out of mootness, have to show that the challenge policy is not reasonably likely to be reinstituted, but it also has to take steps. This is the second part of that doctrine. It has to take steps to permanently reverse the effects of the challenged policy, which is one of the reasons that I led with that in my argument, because the district has not done that, period, full stop. The district has not. So, for example, if this had been a case where the district had taken good-faith efforts before or before or around the time of oral argument to repeal this policy and said, look, we did this in an emergency situation, we understand things have changed, we're not likely to do it again, and we're going to take steps to reinstate the people who were fired, to compensate the people who were damaged by our actions, including people like the plaintiffs, the named plaintiffs in this case, who were not teachers, electricians, health care workers, teachers' aides. If they had done all of those things and made an effort to reverse the effects of the challenged policy, I don't think we would be here. Ginsburg. Mr. Streeve, what case do you have that says that the school district has to go beyond repudiation and also redress all the potential injuries from the past implementation of the policy? Streeve. Well, I don't think they have to do all of that, Judge Wardlaw, but the case I'm reading from is the Davis case, this is the Supreme Court case, 440 U.S. at 631. It was cited on page 72022 of the panel's opinion. First, it must be reasonably clear that the challenged practice will not happen again. Second, any effects of the alleged violation must be permanently reversed. This is, quote, a formidable burden and holds for governmental defendants no less than for private. Was that a COVID case? Was that a COVID-19 case? No, that's that's L.A. County versus versus Davis, a case from a Supreme Court case from I want to say the late, early, early 90s, 80s or 90s. I'm curious, can you point to any cases in the COVID-19 context in which a policy was rescinded and the court held that the voluntary cessation exception did apply? Did apply to moot the case or to not moot the case? Did apply. The voluntary cessation did apply. Well, I know that there are some, there were some cases decided by the same panel that found that the government's actions were very different then. Now, as to one where the case has not been declared moot, I can't think of one off the top of my head, but I also, Your Honor, I can't think of a case where you had conduct like what we saw here that was, and I think the panel got this right, really egregious and represented a not so much a good faith effort to, you know, to rescind a policy and to make the plaintiff's whole or to at least take some steps to make the plaintiff's whole, but you saw something that was more of an effort to just avoid the consequences. Let's say hypothetically, let's say if I believe that at the time that the policy went into effect, I would support, it was very different times. Everyone back, we didn't know, you know, the science was different. People, we didn't, we were hopeful that the vaccines would work and all of that, but let's say at some point I would have said that L.A. was right, but then hypothetically, let's say that at a point that they didn't need it anymore, that things had changed, and that I agree with you, let's say hypothetically that I agree with you that their conduct was egregious, how do you still win under that if I don't think they're going to reinstate the policy again? Well, I would go to the second step then of, first of all, understanding that it's the government's burden to show that, of course, Judge Callahan, but if you were to agree with them on that. But let's say I, at those junctures, but then I'm with you on that the conduct was egregious, but I don't, but I'm, you know, I'm not sure about what the evidence is. Is the evidence that they'll do it again is because their past conduct is so bad that we know that they're going to, they're always going to do the wrong thing? Is that the evidence? I don't think it's, I don't think it's just that their past conduct is so, is so bad, Judge Callahan. I think that it's, I think you have to interpret the district's conduct in light of its, in light of the actions it took contemporaneously when it moved to rescind the policy. I think that is critical. The timing, the fact that it was, this was done out of the blue. I mean, it was done in September, so at the early end of the school, at the early portion of the school district, but schools in Los Angeles start school in early August, and so this was not a policy. I don't think the record shows that this was a policy change that was, that was coming. It was a policy change made hastily in reaction to what I believe the district thought was an adverse ruling. Counsel, but I think that's going to what Judge Callahan is asking, which I have the same question. Why isn't the, you're just focusing on what they did here, but how do we know what they're going to do in the future? Is there anything in the record indicate, indicate to us that, that they are going to reinstate this policy in the future? Well, nothing, nothing, Your Honor, beyond what we know about how they repealed it. So I think it is, and I don't, I don't want to speak for, for, for the panel, but I think what was in the panel's mind, and having reread that decision last night, I think the panel was, was correct in assessing that, look, we can't, yes, we don't have a statement from the district that says, we will do this again. And I'm not even sure we have a statement from the district that says, we reasonably expect to do this again. However, we also don't have anything to the, to the contrary, which is what evidence you did have in some of the cases, including the cases that were decided by the panel, the panel that Judge Collins was on. These, these cases were all heard en masse in Seattle last, you know, back in 2023. And I, I think that the panel saw a difference between the things that the government did and said in cases that were declared to be moot, and in this case and one other, which I think were, were the evidence suggested that the government's actions, the district's actions were not as, did not reflect this sort of good faith change in policy, and a, with a, I don't want to call it an explicit promise, but at least an implied promise that this is not going to happen again. That's the evidence that, that I'm drawing from. And, and the other thing that I think is important, and this gets to the second part of the, and again, understanding that is, this is the government's burden. So I'm going to switch gears here. Sure. To the, to the merits. So I'd like you to explain to me why there is a need for a public health measure like the one at issue here to prevent the spread of disease, and why Jacobson, which I believe is still binding law, why doesn't Jacobson make it clear, including as the state's amicus brief argues, that a vaccine need not provide immunity and prevent transmissions, and why would, even if you're right, that you've made a credible allegation, why is it relevant that you've alleged that this doesn't prevent the spread of disease? Well, it's... Given Jacobson. Sure, sure, Judge Bennett. Given, so, so I, I consider this really in, I take those questions in context, because what I look at, and bearing in mind that we are here on a, on a pleading motion, right? Yes, we are, yes, we are. Motion for judgment on the pleadings, which is the functional equivalent of a, of a, you know, 12B6 motion to dismiss, and so I look at the, at the analysis, and I go back to what this Court said on Bonk and Judge Reinhart's opinion in the Compassion and Dying case, which then led to the Supreme Court's decision in Washington versus Glucksburg, which is that when you have a substantive due process claim involving an individual interest in bodily autonomy, an adult's interest in saying, I get to choose what to do, what I, what I put into my body, you, you are not applying rational basis review. Now, to be fair, you're also not applying strict scrutiny. What you are doing, and this is, I, I really think, you know, Judge Reinhart wrote about this eloquently in that on Bonk opinion, is what you have, the test you have is a balancing test, and the balancing test is, this is not pulled out of thin air. This is, as Judge, as Judge Reinhart said, this is fully consistent with the Supreme Court's decisions, starting actually in Jacobson, which has repeatedly been called a balancing case, not just by this Court, but by other courts. Well, if we were to hold that, if, or if we were to believe that as to vaccines, the law has not materially changed since Jacobson, why don't you lose? Well, because of what we alleged about what these shots do, do compared to the shots that were at issue in Jacobson. So in Jacobson, you had a smallpox vaccine that they were evidentiary. There was an evidentiary presentation. There were findings of fact made by a judge in that case, that the smallpox vaccine prevented the public, didn't just prevent the person who received it, prevented the public from, prevented the spread of, of smallpox to the public. And you had other factors that were, that played an important part in that, in that analysis. It wasn't just that this was a vaccine, quote unquote vaccine, that the evidence showed stopped the spread, but it was, there was evidence that there was an opt-out. There was evidence that there were no potential consequences, at least no serious consequences from the shot. All of those factors get combined and are part of the balancing test. So I don't think you can say, Judge Bennett, in this case, that, and look, the evidence may show what it will show. I think it's. I read Jacobson differently about whose role it is, which branch of government does the weighing. But I understand your point. Well, I think, and I think this is, again, the panel, the panel decision, the panel majority, I think, did a, did a good job, as did Judge Collins and his, and his concurrence, talking about the preliminary nature of this, of this analysis. And when you assume the truth of our allegations and liberally construe them in our favor, and you consider the other factors that come into play in the balancing test, and that analysis has never changed. I know the compassionate, the result that this court reached on Bonk in the compassionate dying case was, was reversed by the Supreme Court. But the reasoning has never been disavowed, and it has been consistent throughout the Supreme Court's many cases. When you consider what we have alleged about these shots in this case, which is that they aren't preventing spread, they're only, they're essentially medical treatments, they're something that's only, that only benefits the recipient. When you consider that there's no opt-out available, as there was in Jacobson, the balancing test, at least in the pleading stage, applying the proper liberal standard, we can satisfy that. And I think that is what we are seeking to do, and we should have that opportunity. I see I'm, I'm at about ten minutes left, so unless your, your honors have any questions, I'll reserve the rest of my time. Thank you. May it please the court, Keith Jacoby. I'm here today to represent Los Angeles Unified School District and the named administrators. Your honors, the overwhelming weight of Supreme Court, Ninth Circuit, and Inter-Circuit Authority in literally hundreds of COVID-related cases have found, as this panel should find today, that in a case about a long-expired vaccine policy is moot. There is simply nothing to decide, and that is jurisdictional. What about a request for reinstatement? We've said that reinstatement is prospective injunctive relief and is, can be sought consistent with Eleventh Amendment immunity. They've said that they'll amend to, to the extent it's not there, they'll amend to assert that. So how can it be moot if there's relief that can be granted? I, I would suggest that there is, if the court looks at the entire litigation history of this case, there have been many opportunities to do just that. There were three complaints filed in this case. There was an opportunity to amend after Judge Fischer's final ruling. There was an opportunity to add. I think you can change the policy and they just have to be stuck. They can't react to that and say, well, now that you're changing the policy and you're taking that off the table and trying to kill the case, now I'll assert this claim. I think. Don't get to do that? I do not think. Broad requests for injunctive relief don't already cover this? I do not. I do not think they do. I do not. So if, if they had alleged in the complaint, we want re, I'm not sure exactly of the timing of when they lost their jobs, but if, if they had alleged we want reinstatement, would you agree that the rescinding of the vaccine would not render the case moot if they had made that claim explicitly? I just think that's a different lawsuit. So your is, so I take then your answer to my question is yes, it wouldn't be moot if they had made that claim. If they had made that claim, there would be a different question to be addressed today, but that is not what was pled in this case. Can you answer Judge Bennett's question? I mean, you can't just fight the hypothetical. Would the case be moot if they had clearly stated a claim for reinstatement in the complaint? Yes or no? With I, it would, it would remain moot with respect to the vaccine policy itself, which is the core thing that was being challenged in this case. How could that be true? Their request for reinstatement would turn on the validity of the grounds on which they were fired, which is the policy. So it would not be moot. Well, I would suggest respectfully that that's speculation because the court, the district in the spring of, in the fall of 2023 said this policy is no longer needed to protect the health and safety of students. So the consideration of whether any particular employee, whether they're student facing or non-student facing, that would rise or fall on its own merits. I mean, my, my opponent said, well, these are all sorts of people. Some of them are electricians. Some of them are student facing. The policy itself was designed to do something that as a matter of law, the district was required to do, which is to protect the safety of students. Counsel, I'm having trouble understanding your answer to Judge Collins's question. If the, if the policy violates the Constitution and somebody seeks reinstatement or related equitable relief, it seems to me they would win. If the policy is entirely valid in that circumstance, it seems to me that they would lose. But if one were to either say they would have the right to amend or read the request for relief, injunctive relief broadly, it's hard for me to see how the case is moot, regardless of how the merits come out. Well, I, I, I mean, this is the problem of using a 2025 lens to decide whether something that happened in 2022 was inappropriate or appropriate. I don't think that, I think this Court, both on the merits and with respect to mootness, can decide that this policy was a legitimate policy. It was rational. Well, but let me ask you this. Okay, let's assume that, hypothetically, that it was a legitimate policy at the time. But if L.A. held on to it longer than anyone else, and I think there is some evidence of the record to that, and also Mr. Howard submitted a declaration that after oral argument, Ms. Michaels asked him, what are you going to do when we rescind the mandate? Ms. Michaels also filed a declaration, but she did not dispute that she made that comment. Given the sequence of events, including that the proposal to rescind the mandate was submitted to the district board the same day as the oral argument, why shouldn't we draw the inference that you decided to rescind the mandate in an attempt to manipulate the Court's jurisdiction and avoid an adverse decision? And you've done nothing at this point. You held on to it longer than anyone else. You waited until the bitter end, and there's nothing that's happened to indicate that you, that if you held on to it too long, that you have tried to ameliorate any of the situations, why shouldn't they have a chance? Well, I think we should consider the actual sequence. It seems like you're digging in, and if being that obdurate, why don't, why won't you just do this again? Well, I would point out that the Ninth Circuit in Donovan v. Vance held that a Department of Energy vaccine policy was moot. It was rescinded while Donovan v. Vance was on appeal, while it was being considered by this Court in 2023. I would point out, and I believe it's in the record, that the federal and state emergencies were lifted in the end of February and the end of May of 2023. The school year roughly starts in September of 2023. The idea that this policy was held on to longer than anyone else and to the bitter end, I think if the Court reviews the body of COVID jurisprudence, you will see that most vaccine mandates were rescinded sometime in 2023. And none of that changed the results under the rational basis review test. The appellants are taking a lot of liberties here by saying— The motion before the Board to rescind this mandate was filed the afternoon of the date of oral argument. So after the argument that afternoon, the motion to rescind was filed. Is that correct? That is certainly possible, but I don't believe there's anything in the repetition and evading review standard that obligated the district to keep the policy in place for one minute longer than it felt was necessary. Mr. Callahan's concern is, you know, manipulation of the Court's jurisdiction. And it happened twice in this case because you evaded the first lawsuit, got it dismissed, reinstated the policy, and then on the day of the argument when you didn't think it went well, you then dropped the repeal again and then come in and say it's moved. Well, respectfully, Your Honor, the first time the policy was changed was in the very beginning of the crisis. That was in 2020. That's when the schools were closed. That's when there was no instruction at all. And so to take two points, if you look at the Ninth Circuit cases and Supreme Court cases that talk about evasion and evading review and possibility of repetition, they typically deal with disputes that are on a cadence, like blind students needing to take the bar exam or, as in a case that I think you worked on, Judge Collins, that had an injunction where neighbors were fighting with each other and one of their guns was taken away. And your decision said, well, there is a possibility that this could recur. They could get their gun back. Neighbors will keep fighting. So here we sit in March of 2020-25, and there is no evidence that the district has any intent to reinstitute the policy. And I would suggest that there is nobody in this courtroom, there is nobody outside of this courtroom, who could predict that a pandemic will recur again. And repeatedly, the Ninth Circuit has said, in case after case after case, including Brack v. Newsom, which was a much more draconian measure, closing schools altogether, the court has said that public safety measures like the vaccine, including the vaccine policy, allowed the schools to reopen. It is just painfully difficult to try to judge 2021 through 2023 actions through the lens of 2025. Can I ask you a question about the Cone issue? Are you aware of any other locally elected governmental body that enjoys 11th Amendment immunity other than California school districts? I cannot give you an answer of that one way or the other, but what I can say is two things. One, there has been a number of cases involving Arizona and Nevada school districts where there was a detailed analysis that said the way that schools are funded and the way that judgments are rendered are very, very different from California. California's constitution and California's education code scrupulously manage every aspect of the school district's operation from how the superintendents are chosen to what kind of textbooks are being read in the schools. This is a very, very highly regulated arm of the government. The Cone puts some significant weight on how the body is constituted and selected. And it's very odd to say that a locally elected body is actually the state of California. That just seems very peculiar. Well, very local officials elected by the public are part of the government too. That was my question. Are you aware of any other locally elected official anywhere in the country who enjoys 11th, where the entity enjoys 11th Amendment immunity? Well, the California bar examiners are found to have 11th Amendment immunity. But that's a statewide entity. I mean, my point is a locally elected entity enjoying the 11th Amendment immunity of states? I am aware of no case that has ever... Let me ask you a question. I'm just not sure. LA County sheriffs, haven't they been held to be an arm of the state? I believe that's true. I should know that. And they are locally elected, right? The sheriff is elected. Yeah, it's elected by the county, right? Yes. And there's a lot of case law on that, right? Yes. Okay. I certainly believe that the DC test that was adopted in the Cone case... Does the LA County Sheriff's Department, isn't it routinely sued under 1983? It doesn't assert 11th Amendment immunity and doesn't have it, does it? I don't know the answer to that question. Counsel, could I actually get back to the... Maybe if you're away from the 11th Amendment, just to get back to the mootness question, just so I understand your position. So there's been a lot of discussion about what counsel may have said or done back in 2023. Yes. My understanding of the mootness doctrine is we have to evaluate whether a case is moot today. Correct. So whatever happened in 2023, maybe that's atmospheric evidence of some kind. But it depends on what happens. Is the case moot today? I believe... Isn't that the inquiry? I believe the case is moot. That is the correct inquiry. I believe the case is moot today because all of the cases that discuss this say that you have... There must be jurisdiction at all points. My opponent points out this is a pleading motion. In their view, this case is just starting. So we're going to have a 2027 trial about the bona fides of the way the district acted in 2021 and 2022 under completely different conditions. And I would point out that in terms of repetition, well, what repetition are we talking about exactly? The COVID-19 vaccines, if you were to go down to the local CVS, are completely different today. It's a completely different species of vaccine, a completely different menu of vaccines than were available in 2021 and 2022. Today, children are able to get the vaccine. Children were not able to get the vaccine in 2021. Council, I'm curious. I get the drift of what Judge Owens is asking. But what do we look at? What can we look at and what can we take judicial notice of from which we could make a decision today as to whether the case is moot today? I suppose one of the things we could look at is the fact that the school district has not reenacted the policy. What else can we look at on this record? The public health situation is entirely different today than it was in 2023. Vaccines are available to people of all ages. They're widely available. There are no restrictions in the record regarding instruction. All of the other arm of the government and even non-arm of the government entities that have had cases litigated have not reinstituted policies on much more robust records than this one. If you look at the Rutgers and Indiana cases, those were preliminary injunction cases by the Third Circuit. And 173 pages of rational basis review, no likely to repeat. Are you aware of any COVID vaccine requirements anywhere in the world right now? I certainly don't think there's any in the record and I'm not aware of any. So we would have to, for the case not to be moot, we would have to say despite that, it's reasonably clear that LA Unified would put it back in place when there were no other in the world. I agree with that. And one other point I would make about- Didn't the district expressly reserve the right to be able to reinstitute this mandate when it revoked the mandate after oral argument? I think they didn't exclude the possibility that if another crisis- They didn't exclude. It specifically says if health conditions necessitate doing this again, we're going to do that. I'm wondering, I mean our case law says that on mootness under this exception, if a government entity remains legally and practically able to return to the thing that it's voluntarily abandoning during litigation, not moot. So with that express reservation in the last revocation of the mandate, why is that standard not met? I would think respectfully that the court is conflating two issues. There is the issue of would the district, in order to preserve mootness in this case, have to forever waive the right to take action as an arm of the state to protect its students from- Well maybe you could have just been silent on the point and then we wouldn't have had something to look at and wonder what is the district thinking here. But where the district expressly reserves the right to do this again, it's hard to sort of skip right past that fact. Well the obligation to protect its students under California government code A-20 exists. And again, it's so easy today to look at what happened in Delta and what happened in Omicron and then what didn't happen next and say, well gee, you shouldn't have to do this again, have you? But we didn't know. We didn't know that Delta was coming before it did. We didn't know when Omicron came, what it would look like. And we didn't know in the spring and the fall and the summer of 2023 that there wasn't going to be a gamma or a theta wave. And I do not think that the district is obligated to waive its powers to protect students in order to avoid mootness of a two-year expired mandate. I mean, there is no there there. It is not the role of this court to write the history book of COVID. It is not the role of this court to do a medical biography of COVID. It is the role of this court to decide active disputes. And this is not an active dispute. It just simply isn't. No other case has found that this is an active dispute. Does the fact that it's expired affect the reservation at all? Well, in my opinion, the COVID policy is sui generis. It was a dynamic action to a catastrophic problem. And so if the court were to say, well, what problem could arise tomorrow or the next day? I mean, the answer is I don't know. But I think that LA Unified tomorrow or the next day would have the same opportunity to have a dynamic and forceful response to protect the safety of students. And again, I'm just curious, because in Brock, wasn't there a reservation there in that case? I'm certainly I do not recall precisely, but I'm certainly not aware that Governor Newsom waived his right to not close the schools again if he needed to. Again, I do want to address with the short time I have left the merits issue about body autonomy and Jacobson and sucked. Can I ask you real quick? There's a lot of focus on the statement made on what are you going to do when we rescind the mandate? I'd like to give you an opportunity to respond to that. I think that that colloquy is saying nothing more than what the district was saying from the minute they put the vaccine policy in place. We are going to very, very seriously consider the need for this very, very serious measure at all times. And when we don't need it, we will get rid of it. And they were operating in an environment where in the summer of twenty twenty three, when there was no post Omicron wave. And this court is judicially the district court judicially noticed the improvement in the mitigation of covid-19 steps. This court recognized in Brock versus Newsome that public policy measures, including vaccine policies, did mitigate the impacts of covid. They were simply saying, well, yeah, we're going to keep looking at this. And I think to split hairs and say, well, if they would have done it in twenty twenty four, then that would have been bad. Twenty twenty three, maybe a little bit better. I don't think any of that is the test. I think the test is today. Is there anything for this court to rule on jurisdictionally? And I'd finally like to address the point of the body autonomy issue and the counterfactual Jacobson gives this court everything that it needs to know to decide this case, because the Jacobson court spelled out in detail that there were people in the early nineteen hundreds who did not think that smallpox vaccines were effective in spreading the risk of smallpox. And Justice Harlan said that there is no principle that everybody believes in the existence of a covid counterfactual does not remove it from the rational basis test. The only thing that can remove this case from the rational basis test, if there is a fundamental constitutionally ingrained liberty interest in Justice Brand, as I said in the Zuck case, categorically, there is no constitutional right to decline to be vaccinated. It simply doesn't exist. And kind of ending my argument. But the district court, you know, in response to that argument, seem to say it didn't matter if it was medical treatment, because even if it's medical treatment, Jacobson gives you broad public health authority. Is it the district? Does the district think that's correct? Does the district think it has the right for the safety and health and well-being of its employees to dictate their medical treatment? Well, I think I think that the characterization of the covid-19 shot as a medical treatment or as a vaccine is besides the point, and I think from a common sense point that this court can rely on and judicially notice, medical treatments are typically things you do to yourself to cure something you have. If I have chemotherapy, it has no impact on the person sitting next to me, whereas vaccines are typically recognized to be things that you get when you don't have the disease. In fact, I think it is contraindicated to take a covid vaccine if you have covid. And the benefit is to protect the person sitting next to you. So I think I think that is a common enough belief that this court can comfortably rely on. But load bearing weight on transmission. And so you reject the district court's premise that there's an authority over medical treatments. It does rest on whether or not it's a substance that that prevents transmission of disease to other persons. No, I don't think it rests on that because I well, first off, I would say that the I understand under the well pleaded complaint rule, you have to take everything that they say is true. But I think common sense dictates that everybody knows that if you're coughing and sneezing on people, you're transmitting. And if you're mitigating that symptom with a covid vaccine, you are reducing transmission. But again, I think Jacobson and Zucked and all of the cases that follow it say it's not for the courts to sort these things out. The question is, is there a reasonable basis to for the state to take the action that it took to protect public safety? This court already decided in Breck versus Newsome that vaccine policies was one of the measures that was reasonably taken to protect public safety. And nothing, nothing about what has happened since the district lifted the mandate policy in the fall of 2023 changed that. And suppose let me give you a hypothetical. Suppose back in 2021, pharmaceutical company says there are some studies we've commissioned that shows there are drug mitigates the symptoms of covid. And the pharmaceutical company donates the governor says access and shows the studies and the governor says, OK, great. We don't know if people how severe the symptoms may be when someone gets covid. So everyone should get this pharmaceutical drug. It doesn't prevent transmission, but mitigates the symptoms for purposes of this. That's just to call it ivermectin. Would under your reading of Jacobson put the governor impose a mandate saying everyone should get ivermectin because it reduces the symptoms of covid. And therefore, I guess, as you in your hypothetical, they'll cough less and they'll somehow prevent the transmission. You know, I think under that hypothetical, the state would have to prove that that is rationally related to the objective goal. I think they have a study. You can always get a study. They show a study. Pharmaceutical company conducted a study shows that it does reduce transmission. Well, in California, like, for example, one of the reasons why students didn't weren't required to get covid vaccines is because there is a statutory system in place to decide which vaccines people get. But I will say that there are there are vaccines and things like a tuberculosis test. A student must a teacher must take a tuberculosis test to work at a unified. So I don't know if it would go all the way out to ivermectin. I suspect that it would not. And but, you know, and why is that? I'm just trying to send you a reading of Jacobson. Why would that not cover ivermectin? Well, because I think that there is a purpose of hypothetical. There are some scientific studies that showed mitigates the symptoms. We accept that. It's I suppose I would say that that is conceivable. Council isn't part of your answer. The first sentence in Jacobson. This case involves the validity under the Constitution of certain provisions in the statutes of Massachusetts relating to vaccinations. Yes. What is what is the significance of any if there were no opt out provisions? So even in Jacobson, there were some provisions that allowed opt outs for people to receive a small tax vaccination. Well, there have been a number of covid cases involving government contractors that say that the ultimate opt out provision is to not work there. That you don't there is not a constitutional liberty interest in working for the government if you're unwilling to take the vaccine. So nobody here was being held down and told they have to get a vaccine. The question was, if you chose not to get a vaccine, then you would there would be an employment consequence that. But so I don't think we were dealing with a case of no opt out whatsoever. In other words, this isn't like if a student doesn't get a measles vaccine, they might not be allowed to the school. It's not like that. I mean, I would you know, I would just finally say judgely that governments do need flexibility to respond to medical crises as they exist in a sensible way. We are seeing in real time what is happening in this country when vaccines are thrown to the curb. We're seeing it in Texas. We're seeing it in New Mexico. This is very, very dangerous. What my client sent me here to say to you today is that they were taking the most prudent measures they believe that they could take to protect the safety of children. That is job one. And there are many bodies of case law that say that while you do not check your constitutional rights at the courthouse steps, I believe that's the Tinker case. They cannot be expressed in the same fulsome way inside of a school campus that they can be in your home. And I think that is really the ultimate answer. Well, what's interesting, counsel, is we we obviously preside over nine states. And I, I can't help but think that if this case were in Idaho, it would be different than if we're in L.A. But by the same token, people have very different. They do. You know, I think society we all live in society and people have very different attitudes about vaccinations. And maybe both both of those views can be views that people hold in good faith. But I think L.A. certainly takes a different view than some other parts of our circuit in terms of that L.A. knows best. Well, I think I certainly agree with you, Your Honor, that there are different views in different parts of the circuit and in different parts of the country. But I would remind this court that. The district is the second largest school district in the United States. It stretches from the Pacific Ocean to the innermost parts of the city of L.A. Many very, very vulnerable, highly impacted communities are served by L.A. unified. Communities with less access to health care and even to vaccines than other parts of the community. And L.A. unified had to try to make the very best decision to all of them. I would ask that when you consider this issue, you consider that that the L.A. school district runs from the Pacific Palisades to Boyle Heights. And those are very, very different communities. And I would ask that you remember the context that all of this was decided in. I wanted to start my argument with this, but I guess I'll finish with it since I have two minutes. I think it's very, very important when deciding an issue about injunctive relief of a policy such as this, that we each pause for one second and try to remember where we were and how we felt five years ago. Five years ago, March 11th, 2020, my son played in his last high school baseball game. We went to the field. Parents did not sit next to each other. They kind of looked at each other very suspiciously and furtively. In September of 23, council for the district stood up before the panel and defended a policy that required vaccinations then and exempted people who had two shots from 21 that everyone knew were no longer valid in 2023. That's the policy that was at issue and that was defended, not something from March of 2020. I would respectfully say that the history book of COVID-19's vaccination efficacy remains to be written. There is an enormous amount of literature that says even one vaccine will have a significant impact on a person's immunological response to one COVID infection or the next one. And I would implore the court to not engage in that historical writing or to ask the district court to go back and to try to do it, but to rather say here we are thankfully, so thankfully in 2025 that we're not in the same place that we were today, that we can hopefully put this behind us and hopefully learn from it. So if there is another medical health crisis, and I believe I said to you there are cases capable of repetition come on a cadence. If the cadence of this type of crisis is every hundred years, we'll all be very thankful and very lucky. And I do want to say that I believe that my client did its level best with the information it had, talking to experts all over California, Stanford, UCLA to try to do the best thing. But whether you agree that it was not soon enough, not vigorous enough, not what you might have done, in 2025 we stand in one place, no vaccine policy, nothing to enjoy. Thank you. Your Honors, I have just a few points to make in closing today. First off, if we get the chance to go back to the district court, we will explicitly seek reinstatement for those plaintiffs who have not been reinstated to their former jobs. And we will seek monetary damages. We will seek to litigate this sovereign immunity issue now under Cone, based in part on what something Judge Callahan mentioned earlier, which is the needless extension of this policy far beyond others and far beyond what was reasonable until it was clear to the district that it was going to lose in court. And I want to point out two things. I'm referencing the panel's opinion here because this is the easiest place for me to find it. Two things that I think were critical in the mootness analysis. They were comments made not just by Ms. Michaels to my law partner, Mr. Howard, after the argument, but also statements made by board members when they voted to repeal this policy. I'm reading from page 722 of the panel's opinion. These are the record sites. One statement from a board member who was, quote, not afraid of litigation or the, quote, zealousness that will come out with lawsuits, which seems to be a reference to potential future challenges. A comment by board president Jackie Goldberg that when she voted, she voted reluctantly yes. And I would also echo comments made by some of the amici, the state attorneys general in this case, that seem to suggest a desire to institute policies like this in the future. What this all leads up to, Your Honors, is what the panel called, and I'm reading from now end of page 722, 723, LAUSD's pattern of withdrawing and then reinstating its vaccination policies, which, of course, is part of the record here. Not just what happened at oral argument and immediately after the oral argument, but what happened before, what happened in response to the first policy that was instituted quickly withdrawn after a lawsuit was filed and then reinstated, prompting another lawsuit. So that's the record on which we have to focus today. And I think that is exactly, that takes this case out of all of the other mootness cases where we had repeals accompanied by statements that suggested the policies, whether because of their breadth in the case of Governor Newsom's, you know, would be unlikely to recur again. I want to make two other points before I finish. First, the issue, Judge Collins, that you raised with the Cohn case. I would, first of all, I would encourage, I would discourage this court from doing a full sovereign immunity 11th Amendment analysis since we haven't pleaded that claim yet. We would like to plead it in the district court. We would like to litigate that issue. We would like to create an evidentiary record that perhaps may come back up to this court at some point. But one of the things I noticed in Cohn, and I think it's important when we look at school district sovereign immunity liability, and this is responding to the issue that we, that we briefed through supplemental briefing, is the importance of both, not just the funding the way school districts are funded in California, but the dignity interest. And this idea of who is really deciding things and what is the State on the hook for or not on the hook for. And I noticed a reference in a case was cited by the State Attorneys General in their amicus brief case, Butt v. State of California. Page 681 of that decision talked about what the State is and is not vicariously liable for with respect to local school districts. And it pointed out that among other things, the State is not vicariously liable for torts committed by local school district officials. And it pointed out that the State is not vicariously liable for breaches of contracts committed by local school district officials. So this idea, there needs to be a grappling, I think at some point, a really a revisiting of this court's decisions in Bellinger and Sado, and a full analysis of what's really going on here. Where is the money coming from? Who has the control to reconcile what this court has said with respect to California school districts and what it said with respect to virtually every other school district that I know of, Arizona, Alaska, Nevada, and what other circuits have said with respect to no sovereign immunity, no Eleventh Amendment immunity extending to school districts in other States. Finally, and unless the Court has any other questions, I do, there's one thing that I wanted to point out, two things I wanted to point out about Jacobson, because today is March 18th of 2025. I know that's my sister's birthday yesterday, so it's easy for me to keep track of. But it was five years ago that I first read the Jacobson opinion, and I noticed something at the end that I think is important for us to remember here today. It's a statement from the Court in Jacobson that, quote, we now decide only that the statute covers the present case and that nothing clearly appears that would justify this court in holding it to be unconstitutional and inoperative in its application to the plaintiff in error. So I think when you take that language and you take it in context and you consider all of the case law that has come down in the 120 years since the Supreme Court decided Jacobson, I think it is clear that my clients have a right under the law to plead this substantive due process claim, both with the relief they seek now, with the relief they already sought, plus reinstatement, plus damages, and to have a chance to litigate that case on the merits. There's one other thing about Jacobson that I think is important to remember, because when I first read Jacobson five years ago, it also led me to a case called Buck v. Bell, decided I think in 1925, in which Justice Oliver Wendell Holmes famously said that the principle that justifies compulsory vaccination also supports cutting the fallopian tubes. Quote, three generations of imbeciles are enough. I'd like to think that we as a society have progressed in the 120 years since then, and even though I think there are ways to reconcile Jacobson and to put it in its proper historical context, proper constitutional context, as a balancing test, I think we need to apply that test in a way that takes account for all of the developments in constitutional law since the early 20th century, including the privacy law of the 1960s and beyond. That's all we ask for. And unless the Court has any other questions, I would see the rest of my time. Thank you. Thank you. Mr. Street, Mr. Jacoby, thank you very much for your oral argument presentations here today. The case of Health Freedom Defense Fund v. Alberto Carvalho is submitted, and we are adjourned. Thank you.
judges: MURGUIA, WARDLAW, CALLAHAN, OWENS, BENNETT, BADE, COLLINS, LEE, FORREST, MENDOZA, DESAI